## Kentucky Utilities Co. v. Commonwealth.

(Decided March 4, 1938.)

(As Modified on Denial of Rehearing June 24, 1938.)

GORDON, LAURENT, OGDEN & GALPHIN and RICHARD L. GARNETT for appellant.

**152**

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, M. O. SCOTT, Commonwealth's Attorney, and FRANK W. JONES, County Attorney, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The grand jury of Barren county returned an indictment against appellant, charging it with the violation of the "Unfair Trade Practices Act," chapter 109 of the 1936 Acts of the General Assembly of Kentucky, now incorporated in Carroll's Kentucky Statutes, Baldwin's 1936 Revision, as section 4748h-1 to 4748h-14, both inclusive. The act became effective May 15, 1936.

It appears that the indictment was drawn under section 1 of the act, now section 4748h-1, Kentucky Statutes, which, in so far as is pertinent, reads:

"It shall be unlawful for any person, firm or corporation, doing business in the State of Kentucky and engaged in the production, manufacture, distribution or sale of any commodity, or product, or service or output of a service trade, of general use or consumption, or the product or service of any public utility, with the intent to destroy the competition of any regular established dealer in such commodity, product or service, * * * to discriminate between different sections, communities or cities or portions thereof, * * * by selling or furnishing such commodity, product or service at a lower rate in one section, community or city, * * * than in another after making allowance for difference, if any, in the grade or quality. * * * This Act shall not be construed to prohibit the meeting in good faith of a competitive rate, or to prevent a reasonable classification of service by public utilities for the purpose of establishing rates."

In the accusatory part of the indictment it is charged that the defendant unlawfully and willfully discriminated in the retail price of a commodity of general use, to wit, ice between different cities of the state of Kentucky for the purpose of destroying competition; and, in the descriptive part it is charged that on the —— day of September, 1936, and within twelve months before the finding of the indictment, the defendant did unlawfully and willfully sell ice to Travis Taylor in Glasgow, Ky., at a price less than the defendant com-

pany sold ice at the same time in the cities of Springfield, Lancaster, Stanford, and Lebanon, Ky., to the same customer, with the intention and for the purpose of destroying the competition of the Citizens Ice & Fuel Company, which was engaged in selling ice in Glasgow, Ky., and then a regularly established dealer in the sale of ice in Barren county, Ky.

Upon a trial of the case the jury found appellant guilty, and fixed its fine at $700, and from the judgment entered upon that verdict appellant has prosecuted this appeal.

In appellant's brief four alleged errors or grounds of reversal are relied on: (1) The court erred in admitting incompetent evidence; (2) if it be assumed that all evidence admitted was competent, still it is insufficient to sustain a conviction; (3) the act is unconstitutional; and (4) the indictment was defective. We will discuss the points in the order named.

(1, 2) At the beginning of the trial counsel for appellant moved the court to direct the Commonwealth and its counsel not to introduce evidence of any act or transaction of the defendant company or its competitor, Citizens Ice & Fuel Company, prior to May 15, 1936, the effective date of the act, under which the defendant was indicted. Counsel for the Commonwealth objected to the motion and stated that if the evidence was confined to acts and transactions occurring after May 15, 1936, the Commonwealth could not make out a case, and the court sustained the objection of counsel for the Commonwealth and overruled the motion of the defendant to which the defendant excepted. The court then directed counsel to confine the evidence introduced to acts and transactions occurring on and after January 1, 1936, to which the defendant excepted.

Travis Taylor, the first witness called for the Commonwealth, testified that in September, 1936, he bought ice from the appellant company in the towns of Lebanon, Springfield, Lancaster, Stanford, and Glasgow; that at Glasgow, he paid 30 cents per hundred weight; at Lebanon, 60 cents per hundred; at Springfield, 40 cents per hundred; at Stanford and Lancaster, each 50 cents per hundred. He said that these purchases of ice at the various places and prices occurred on the same day, September 18, 1936. But the witness did not state

when such prices were established or put into effect, or whether any change in prices was made after May 15, 1936.

Vincent Jones, manager of the Citizens Ice Company, was permitted to testify concerning prices fixed by the then NRA code, in the summer of 1933 and 1934, and that on October 16, 1933, the effective date of the NRA code, the price of ice ranged from 80 cents per hundred to 60 cents per hundred by cash, and 65 cents per hundred by coupon price. He further testified at length and in detail concerning various prices at which defendant company and the Citizens Ice Company sold ice in the years 1933 to 1935, inclusive, showing the different changes made in the prices at various times.

Paul Holman, an employee of the local newspaper in Glasgow, was permitted to testify concerning an advertisement by the appellant company in the newspaper in July, 1934, setting out various prices of ice which seemed to be a reduction in the prices theretofore charged by the company. The witness was permitted to read to the jury the prices charged for ice by the appellant company as set out in the advertisement. Also, Leland Miller, a former employee of the appellant company, was permitted to testify concerning prices charged for ice in the summer of 1935, and to statements made to him by Mr. Phelps, manager of appellant company, to the effect that it did sell ice at 30 cents per cwt. and if necessary would go lower, or words to that effect.

At the close of the evidence for the Commonwealth defendant moved the court to exclude from the jury all the evidence of the witnesses who testified in reference to the prices of ice under the NRA code, which motion the court overruled. Defendant also moved the court to direct the jury to return a verdict for the defendant, which motion was also overruled, with exceptions.

The court then upon its own motion admonished the jury, in substance, that the court permitted certain testimony to go to the jury with reference to the acts done by the defendant prior to May 15, 1936, and that the court permitted that evidence for the purpose of evidencing an intention or an indication on the part of the defendant in 1936, to commit those acts, if it did so indicate such intention; and further admonished the

jury that it could not find the defendant guilty for any act of any kind that defendant did prior to May 15, 1936.

It is thus seen that while the jury was admonished that it could not find defendant guilty of any act or acts committed by it prior to May 15, 1936, yet it was authorized to take into consideration any and all acts committed by defendant prior to the effective date of the act in determining whether or not it committed an unlawful act subsequent to the effective date of the act and before the finding of the indictment.

The argument for appellee is that the acts committed by defendant previous to May 15, 1936, were competent under the rule that on the trial of a criminal case evidence of other crimes is competent for the purpose of establishing (1) identity; (2) motive; (3) intent; (4) guilty knowledge; (5) a plan, system, or scheme to perpetrate crime; (6) to cover up previous crime or the evidence of a crime for which the accused is at the time being tried; and (7) a crime, the proof of which is so interwoven as to be inseparable from the crime for which he is being tried, that the evidence of the two acts cannot be separated. See Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724.

We do not think the present case comes within the category of the rule above stated. It must not be overlooked that the acts of the defendant previous to May 15, 1936, were not in violation of any law. The evidence discloses that previous to May, 1936, appellant company and its competitor, Citizens Ice Company, both engaged in competitive price cutting, but they violated no law and were legally free to sell their products at any price they may desire. The rule enunciated in the Sneed Case, supra, and many other like and similar cases, relates to the commission of crime or other acts prohibited by law, the commission of which are admissible under proper circumstances to show an inclination or disposition of the person accused to violate the law or commit the particular offense for which he is on trial, but has no application to acts not prohibited by law at the time committed.

There is little, if any, evidence tending to show that appellant company made any change in its prices after May 15, 1936, except in September of that year it reduced its commercial coupon rates from 30 cents per

hundred to 25 cents per hundred, which apparently was made necessary because the Citizens Ice Company had been selling ice during the summer of 1936 to commercial customers at the rate of 25 cents per hundred. Appellant company had never sold ice at wholesale below 20 cents per hundred and the Citizens Ice Company had sold ice at wholesale as low as 16 2/3 cents per hundred. Under the provisions of the act appellant company had the right to reduce its rates, if it did so in good faith to meet a competitive bid or price of its competitor. It is further shown by the evidence, and it is undenied, that during the summer of 1936, the Citizens Ice Company reduced its prices and sold to some customers at 25 cents per hundred, or 5 cents less than the price charged by appellant company, and a number of former customers of appellant company ceased to purchase ice from it and purchased from the Citizens Ice Company because of the reduced rates.

It is doubtful that there is any evidence tending to show that the reductions in price by appellant company were not in good faith to meet the competitive price of the Citizens Ice Company. But inasmuch as the case will have to be reversed for other reasons, we express no opinion as to the sufficiency of the evidence to take the case to the jury, once the incompetent evidence is eliminated.

(3) The defect in the indictment is that it fails to negative the conditions which by the terms of the statute are made exceptions to the violations of the act, viz., that the act, "shall not be construed to prohibit the meeting in good faith of a competitive rate." The indictment should have pleaded the negative. See Smith v. Commonwealth, 196 Ky. 188, 244 S. W. 407; 31 C. J. p. 822, sec. 411; 31 C. J. p. 720, sec. 269, and notes thereunder.

The negative or exception contained in the statute under consideration appears in the same section under which the indictment is drawn. By the weight of the authority the rule is that when an exception appears in the same section of a statute which defines the offense it is necessary that the indictment plead the exception. However, if the exception is separate from the description of the offense, it is not an ingredient thereof and need not be pleaded.

The exception contained in the statute should have been negatived in the indictment and the failure to do so rendered it demurrable, and the court erred in failing to sustain the demurrer thereto.

These conclusions render it unnecessary to discuss or pass upon the constitutionality of the Act.

For reasons stated, the judgment is reversed and remanded, with directions to set it aside and sustain the demurrer to the indictment.